**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:17-cv-02458-RBJ

NICHOLAS E. CALVERT,
MICHAEL MONTOYA, and
PAUL C. URODA, on their own behalf and on
behalf of all others similarly situated,

      Plaintiffs,
v.

XCEL ENERGY INC. and
PUBLIC SERVICE COMPANY OF COLORADO,
INC. d/b/a XCEL ENERGY,

      Defendants.

---

**JOINT MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTTLEMENT WITH INCORPORATED MEMORANDUM OF LAW**

---

Nicholas E. Calvert, Michael Montoya, and Paul C. Uroda ("Named Plaintiffs"), individually and on behalf of themselves and all others allegedly similarly situated as defined herein (collectively referred to as "Plaintiffs") and Xcel Energy, Inc. ("Xcel") and Public Service Company of Colorado, Inc. d/b/a Xcel Energy ("PSCo")(collectively referred to as "Defendants")("Plaintiffs" and "Defendants" are collectively referred to as the "parties"), through undersigned counsel and pursuant to Federal Rules of Civil Procedure 23(e) and (g), and respectfully submit this joint motion seeking final approval of the class and collective action settlement agreement (ECF# 22-1), which this Court preliminarily approved by Order dated October 10, 2018. ECF#23. Because the parties believe that the proposed settlement is fair, reasonable and adequate to all concerned, the parties jointly request that the Court grant final approval of their proposed class and collective action settlement agreement.

## I.     <u>PROCEDURAL HISTORY</u>

This case was filed on October 13, 2017. ECF #1. Named Plaintiffs Nicholas E. Calvert, Michael Montoya and Paul C. Uroda brought suit on behalf of themselves and a class of all others similarly situated, which they define to include current and former operations personnel, excluding apprentices, employed to assist in the generation of electricity at PSCo's power plants in Colorado. This case concerns PSCo's alleged policy of requiring workers ending a shift and their oncoming replacement workers to meet and exchange information regarding current power plant operations before shift change. Plaintiffs allege that while PSCo compensated incoming and exiting workers for their time on shift, it did not compensate them for this orientation meeting, referred to as a "turnover." Plaintiffs claim that Defendants violated the Fair Labor Standards Act ("FLSA"), the Colorado Minimum Wages of Workers Act ("CMWWA"), the Colorado Wage Claim Act ("CWCA"), and the Colorado Minimum Wage Order ("CMWO") by failing to pay Plaintiffs minimum and overtime wages earned during turnover meetings. Plaintiffs' theory is that operations personnel are similarly situated because they were all subjected to a uniform policy or practice of requiring shift turnover meetings that were not compensated. Plaintiffs Calvert, Montoya and Uroda pled this case as a collective action under the FLSA and a Rule 23 class action under the Colorado state laws. Defendants adamantly deny Plaintiffs' allegations and contend that Plaintiffs were paid correctly at all times.

The Parties conducted extensive informal discovery to inform their proposed resolution of the Plaintiff class' claims. The Parties exchanged and reviewed extensive data sets recording approximately 187,534 shifts worked by 327 members of the alleged class during the relevant time period. The Parties engaged in two months of highly contested negotiations before reaching

2

agreement. The Parties contracted Adrienne Fechter of Fechter Mediation and Arbitration Services, LLC for private assistance in the mediation of this matter. On February 18, 2018, Ms. Fechter hosted nine hours of in-person negotiations which ended in stalemate. Negotiations continued for two months after that mediation, and, on April 20, 2018, the Parties notified this Court that they had reached a settlement in principle and would prepare a settlement agreement memorializing the terms. ECF#14. The resulting settlement was negotiated by lawyers experienced in complex litigation. The proposed Settlement addresses Plaintiffs' litigation objectives and provides significant compensation to the alleged class.

By Order dated October 10, 2018, the Court granted the Parties Joint Motion for Preliminary Approval of the class-wide settlement, preliminarily determining the proposed agreement to be fair and reasonable. ECF# 23 pg. 1. The Court certified the alleged Fed. R. Civ. P. 23 and 29 U.S.C. §216(b) classes for the purposes of settlement, and appointed the Named Plaintiffs as representative Plaintiffs. *Id* pg. 1-2. The Court appointed Plaintiffs' counsel as Class Counsel for the Rule 23 Class and found that the Parties' proposed Class Notice (ECF#'s 22-2, 22-3) and plan for distribution were "adequate, proper and comport[ing] with Due Process." ECF# 23 pg. 2. The Court scheduled the fairness hearing required by Fed. R. Civ. P. 23(e)(2) to occur on February 15, 2019. ECF# 25.

Initial mail distribution of the approved class and collective action notice (together with the approved FLSA opt-in form) to the 327 identified class members was completed on November 19, 2018. Ex. 1, Affidavit of Baro Lee ¶4. One notice was returned as undeliverable. *Id* ¶4. This hybrid settlement of the FLSA collective action and Rule 23 Colorado state law claims provided notice both of the opportunity to opt-in to the FLSA action and of the opportunity to exclude

oneself from (or object to) the Rule 23 class action settlement. ECF#22-2 pg 2. The approved notice provided the class with full information necessary to make an informed decision. Each class member was provided with notice of the precise gross amount he or she would receive if s/he decided to participate in the Rule 23 and/or FLSA settlement. *Id.*

Before the bar date of January 18, 2019, 299 class members (91.4% of class) affirmatively decided to opt-in to the proposed settlement of the FLSA claims at issue. Ex. 1, Lee Aff. ¶5. The fair and adequate nature of the proposed settlement is evident in the fact that the overwhelming majority of class members affirmatively chose to participate in all facets of the agreement. Just one individual requested exclusion from the Rule 23 settlement. *Id* ¶7. No class members objected to the proposed settlement agreement. *Id* ¶8. The class members' response to the proposed agreement has been positive.

## II. SUMMARY OF SETTLEMENT TERMS

### A. COMPENSATION TO THE CLASS

Under the terms of the proposed Settlement, Defendants will provide significant benefits to the certified classes. The Settlement Class is comprised of all current and former employees who worked for Defendant Public Service Company of Colorado, Inc. in one of its generating stations in Colorado during the Class Period, from October 13, 2014 to July 13, 2018 (the date of execution of the Settlement Agreement), in any of the following "Qualifying Positions:" 1) Control Specialist; 2) Plant Operator A; 3) Plant Specialist A; and 4) Plant Specialist B. Any employee working in the role of apprentice is excluded from the Settlement Class for the time worked as an apprentice. Defendants will create a Settlement Fund in the amount of $1,400,000.00 (One Million Four Hundred Thousand Dollars and No Cents).

During negotiations, the Parties reviewed data generated by security gates at Defendants' Pawnee Station power plant, recording 5,517 shifts worked during the class period. ECF# 22-2, Turner Aff. ¶14. Time stamped entry/exit data indicated that on average, class members were on premises for approximately 7.2 minutes outside of their 12 hour shift. *Id.* The Parties agree that some or all of this time could be spent by class members performing non-compensable walk and drive time to enter and exit the facility.[1] While the alleged uncompensated shift turnover time at issue was not precisely recorded, the parties agree that turnover meetings likely averaged fewer than five minutes. *Id.* Plaintiffs calculate that the proposed settlement compensates 9.22 minutes per shift (at the classwide weighted average wage rate), of additional work for every shift that Class Member worked during the class period. ECF# 22-2, Turner Aff. ¶16.

The Class Members earned hourly base wage rates between $24.49 and $48.43 during the class period and, thus, their average hourly wage exceeded state and federal minimum hourly rates even though Plaintiffs allege they were unpaid for shift turnover work. 29 U.S.C. § 206; 7 CCR 1103-1-3. As such, class members could only have suffered damages where turnover meetings were compensable as state or federal overtime. *See e.g., Romero v. Top-Tier Colorado, LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017). Plaintiffs completed an analysis of data recording 187,534 shifts to identify those overtime shifts in which turnover meetings added time to a work day over 12 hours or to a work week of at least 40 hours. Plaintiffs counted 86.5% of such shifts as overtime and therefore eligible for turnover compensation. Where 13.5% of shifts weren't even eligible for compensation, the proposed settlement adding 9.22 minutes of

---

[1] 29 U.S.C. § 254(a)(1).

compensation to *every* shift is generous to the Plaintiff class. Plaintiffs believe that the proposed settlement agreement fully compensates class members. The average Class Member will be entitled to recover $3,547.40 under the proposed settlement. *Id.*

The approved class notice informed recipients of the precise amounts they would receive under the proposed agreement. Class Members had the opportunity to (A) participate in the settlement of the Opt-out Rule 23 Colorado State Law Counts; (B) participate in the settlement of the Opt-in Fair Labor Standards Act Count; (C) participate in both the Rule 23 State Law Settlement and the Opt-in FLSA settlement; or (D) to exclude themselves from this settlement altogether. Two hundred ninety-eight of the 327 class members (91.4% of the class) affirmatively elected to participate in both settlement classes. Ex. 1, Lee Af.. ¶5. Just one individual having opted-out of the Rule 23 class, that settlement of state law claims will benefit 326 workers. *Id ¶7-9.* As such, $1,131,717.46 of the $1,160,000.00 in the net settlement fund (net of attorney's fees and incentive awards) will be distributed to affected class members. *Id ¶*10; ECF# 22-1 pg.4 ¶1.16 . In other words, 97.6% of the total funds provided by the agreement will be distributed following the claims process. In addition to this common fund money, Defendants have agreed to pay all settlement administration costs, and all employer tax obligations on wage amounts paid.

### B. DETAILS OF RELEASE & COMPENSATION

The proposed settlement agreement segments the class members into three groups for the purposes of the release. The lone class member who opted-out, excluding himself from this settlement released no claims. ECF # 22-1 pg. 17 ¶17c; ECF# 22-2 pg. 2. All settlement funds

due to the lone non-participating class member will revert to Defendants. *Id.* pg. 18 ¶18.  One such class member opted out.  Ex. 1, Lee Aff. ¶7.

Those 236 class members who did not opt-out release Defendants and associated entities and persons from all claims that were brought or could have been brought in this litigation. ECF# 22-1 pgs. 23-24.  "This release includes all federal wage claims other than those under the Fair Labor Standards Act plus all claims under state minimum wage laws, state wage payment and collection laws, state overtime statutes, claims under state common law and equitable principles, and express or implied contract claims, arising from the alleged failures set forth above that were brought or that could have been brought in this litigation." *Id.*  Each such class member will be sent a check for the Rule 23 Compensation Amount (wages, exclusive of liquidated damages) to which he is due.  ECF #22-1 pg. 16 ¶17a.

All 299 class members (91.4% of class) who affirmatively decided to opt-in to the proposed FLSA settlement are also participating in the Rule 23 settlement. These fully participating class members will be paid both their Rule 23 Compensation Amount (wages) plus an equal amount of FLSA liquidated damages.  ECF #22-1 pg. 16 ¶17b; 29 U.S.C. § 216(b) (providing for "an additional equal amount as liquidated damages").  They will release all claims that were brought or could have been brought in this litigation, "and additionally release all claims under the FLSA that were alleged or reasonably arise out of the facts alleged in the Lawsuit."  ECF# 22-1 pg. 24 ¶26b.  The settlement does not release rights accrued after its ratification.  The scope of the release is reasonable, releasing only those claims pled or available to be pled in this litigation.

### C.  ATTORNEY'S FEES AND COSTS

To approve this Settlement Agreement, this Court must first be satisfied that the award of attorneys' fees and costs is reasonable.  Morton v. Transcend Servs., No. 15-cv-01383-PAB-

7

NYW, 2017 WL 977812, *2 (D.Colo. March 13, 2017).  As described below, the Settlement Agreement awards reasonable attorney's fees and costs to Plaintiffs' Counsel.

Class counsel performed significant work to obtain the settlement before the Court.  The parties engaged in extensive informal discovery.  Counsel reviewed extensive data sets recording approximately 187,534 shifts worked by the 327 members of the alleged class during the relevant time period, and worked with a retained analyst to calculate damages. ECF# 22-5, Turner Aff. ¶15.  Counsel engaged in two months of highly contested, privately mediated negotiations before reaching agreement.  Following the preliminary approval of this agreement, Plaintiffs' Counsel worked an additional 55.9 billable hours on this matter, as they facilitated distribution of notice, fielded questions from class members, interfaced with the Settlement Administrator and prepared this motion.  ECF# 26-1, Turner Decl. ¶4.

Plaintiffs' Counsel will apply separately to the Court for payment of no more than $210,000 in attorneys' fees and costs. This amount is equal to 15% of the Settlement Fund and is well below the percentage of the common fund routinely awarded as attorney's fees. *Hershey v. ExxonMobil Oil Corp.*, 2012 WL 5306260, *8 (D. Kan. 2012), *aff'd in part, dismissed in part*, 550 Fed. Appx. 566 (10th Cir. 2013) ("And, more generally, a leading authority recognizes that '[e]mpirical studies show that ... fee awards in class actions average around one-third of the recovery.'")(quoting Newberg on Class Actions)); *Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011) ("In approving the fee award, the district court began by citing well-settled law from this court that 25% is generally recognized as a reasonable fee award in common fund cases.").

### D.  INCENTIVE AWARDS TO CLASS REPRESENTATIVES CALVERT, MONTOYA AND URODA

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action settlement.  *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003); *see also Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) ("Courts have held that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class.").  Plaintiffs seek an incentive award to Class Representatives Nicholas E. Calvert, Michael Montoya and Paul C. Uroda in the amount of $10,000.00 each to be paid out of the Rule 23 Class Fund.   ECF# 22-1 pg. 11.

This award is appropriate because these three individuals initiated this litigation and lead its development through extensive mediation and settlement.  ECF# 22-5, Turner Aff.  ¶19.  Plaintiffs Calvert and Montoya are current employees who risked conflict with their employer to bring this case on behalf of Class Members.  *Id.*  Mr. Uroda is a retiree and resident of Michigan who twice traveled to meet with Class Counsel in Denver regarding the case.  *Id.*  The Representative Plaintiffs conducted eleven phone conferences and two in person meetings with Class Counsel regarding the case.  *Id.*  The Representative Plaintiffs were invaluable in understanding the records kept in a very complex power plant workplace.  *Id.*  They attended more than nine hours of mediation and assisted Class Counsel greatly in understanding and analyzing the data Defendants produced. *Id.*   They gathered documents substantiating their claims and facilitated Class Counsel's interviews with five absent class members, so that Counsel could verify the uniform nature of their allegations. *Id.*

In the final analysis, this litigation would not have occurred, Defendants' alleged violations of the FLSA and state wage laws would not have come to light, and the workers would not have recovered the significant wages this agreement contemplates without the work of the Representative Plaintiffs. The requested $10,000.00 incentive award is reasonable in this case. *See*, *e.g.*, *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995)(approving $50,000 participation award to a single class representative); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (approving incentive awards of $25,000 to each named plaintiffs in a wage and hour case); *Rausch v. Hartford Fin. Servs. Group*, 2007 WL 671334 (D. Or. Feb. 26, 2007) (approving $10,000 incentive award per named plaintiff).

### E. THE COURT SHOULD GRANT FINAL APPROVAL TO THIS CLASS ACTION SETTLEMENT.

A class action under Rule 23 may not be dismissed, compromised, or settled without the approval of the Court. Fed. R. Civ. P. 23(e). The review and approval of a class action settlement is undertaken in three steps: (1) preliminary approval of the proposed settlement after submission of a written motion for preliminary approval, the proposed class settlement, and the proposed class notice; (2) dissemination of mailed and/or published notice of the settlement to all affected settlement Class Members; and (3) a formal fairness hearing or final settlement approval hearing, at which time Class Members may be heard regarding the settlement, and at which time evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented. *Manual for Complex Litigation (Fourth)* §§ 21.632-34 (2004).

To determine whether a proposed settlement under Fed.R.Civ.P. 23(e), is fair and equitable to all parties, courts apply the following fairness factors: (1) whether the

proposed settlement was fairly and honestly negotiated; (2) the judgment of the parties that the settlement is fair and reasonable; (3) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; and (4) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). In both the Rule 23 and FLSA contexts, the endorsement of a proposed settlement by counsel for both parties is a "factor that weighs in favor of approval" of a settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella v. A&R Demolition, Inc.*, No. 04-cv-1965, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D. Tex. May 7, 2008). This standard having been met as described above, the parties request that this Court grant final approval of the proposed settlement.

## CONCLUSION

The arms-length settlement in this matter avoids additional and unnecessary litigation expense and delay and makes whole the FLSA Plaintiffs and the Rule 23 Class. The proposed attorney's fee and cost award is reasonable and deserved in light of Class Counsel's efforts and the results obtained. For the reasons set forth above, the parties respectfully request that the Court grant the instant motion in its entirety and enter an order granting final approval to the parties Settlement Agreement.

Respectfully Submitted,

*s/ Andrew H. Turner*
Andrew H. Turner
Naomi Y Perera
THE KELMAN BUESCHER FIRM
600 Grant Street
Suite 825
Denver, CO 80203
303-333-7751
303-333-7758 (fax)
aturner@laborlawdenver.com
nperera@laborlawdenver.com

*Attorneys for Plaintiffs*

*s/Ryan P. Lessman*
Ryan Paul Lessmann
Jackson Lewis, P.C. -Denver
950 17TH STREET
Suite 2600
Denver, CO  80202
303-892-0404
303-892-5575 (fax)
lessmannr@jacksonlewis.com

Stephanie Leigh Adler-Paindiris
Jackson Lewis, P.C.-Orlando
390 North Orange Avenue
Suite 1285
Orlando, FL 32801
407-246-8409
407-546-8441 (fax)
Stephanie.Adler-Paindiris@jacksonlewis.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

      I certify that I filed the foregoing document electronically through the CM/ECF system, which caused all parties entitled to service to be served by electronic means (as more fully reflected on the Notice of Electronic Filing), including:

Ryan Paul Lessmann
Jackson Lewis, P.C.-Denver
950 17th Street
Suite 2600
Denver, CO 80202
303-892-0404
303-892-5575 (fax)
lessmannr@jacksonlewis.com

Stephanie Leigh Adler-Paindiris
Jackson Lewis, P.C.-Orlando
390 North Orange Avenue
Suite 1285
Orlando, FL 32801
407-246-8409
407-546-8441 (fax)
Stephanie.Adler-Paindiris@jacksonlewis.com

                                                  */s/ Andrew H. Turner*
                                                  Attorney for Plaintiffs